1    WO

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                       FOR THE DISTRICT OF ARIZONA

8

9    Landmark American Insurance Company;)    No. 07-02420-PHX-ROS
     RSUI Indemnity Company,              )
10                                         )    **ORDER**
             Plaintiffs,                   )
11                                         )
     vs.                                   )
12                                         )
13   Turner Construction Company,          )
                                           )
14           Defendant.                    )
                                           )
15   _____)

16

17
              Pending before the Court are Defendant's and Plaintiffs' Cross-Motions for Summary
18
     Judgment (Docs. 21, 23). For the foregoing reasons, Plaintiffs' Motion shall be granted and
19
     Defendant's Motion is denied.
20
                                    **BACKGROUND**
21
              Landmark American Insurance Company and RSUI Indemnity Company ("Plaintiffs")
22
     each issued insurance policies for commercial liability coverage ("Policies") to Arizona
23
     Valley Underground, LLC ("AVU"), (Def.'s SOF, Doc. 22 at ¶ 1), pertaining to its work as
24
     a subcontractor for Turner Construction Company ("Defendant") on the North Mountain
25
     Visitor Center project,(Def.'s Answer, Doc. 11 at ¶14). Defendant was listed on a Certificate
26
     of Liability Insurance ("Certificate") that Minard-Ames Insurance Group, AVU's insurance
27
     agent, issued in connection with the Policies (Def.'s SOF, Doc. 22 at Ex. 1). Concurrently,
28

1    AVU entered into a premium finance agreement with Standard Financing ("Standard") to
2    finance the cost of the related premiums (Id. at ¶ 4). This agreement included a provision
3    authorizing Standard to cancel the Policies on AVU's behalf should AVU fail to make its
4    required payments to Standard (Id.).

5         Subsequently, Standard exercised its authority to cancel for nonpayment by issuing
6    an "Insured's Notice of Cancellation" for both Policies and the cancellation of both Policies
7    became effective on October 16, 2005 (Pl.'s SOF, Doc. 24 at ¶¶ 9-10). Defendant was not
8    notified the Policies were cancelled until after submitting a claim ("Claim") to Plaintiffs
9    nearly six months after the effective cancellation date of the Policies (Def.'s SOF, Doc. 22
10   at ¶¶ 5-6). Plaintiffs denied the Claim submitted by Defendant (Id. at ¶ 7).

11        AVU then filed for Chapter 7 Bankruptcy protection and Plaintiffs sought declaratory
12   relief in Bankruptcy Court against AVU, Standard, and Defendant (Compl. at ¶¶ 8-9).
13   Default judgments were entered against AVU and Standard (Id. at ¶ 10). However, the
14   Bankruptcy Court dismissed the claim against Defendant without prejudice for lack of
15   subject matter jurisdiction (Id. at ¶¶ 12-13). Plaintiffs now seek a judgment against
16   Defendant in District Court declaring (1) Plaintiffs took no affirmative action to cancel the
17   Policies; (2) the Policies were cancelled by Standard; (3) the Policies were cancelled
18   effective October 16, 2005; (4) Plaintiffs had no duty to notify Defendant that the Policies
19   had been cancelled; and (5) the Policies do not provide coverage for the Claim (Id. at 13).

20   
21                                    **DISCUSSION**

                          **I. Summary Judgment Standard**

22   
23        A court must grant summary judgment if the pleadings and supporting documents,
24   viewed in the light most favorable to the non-moving party, "show that there is no genuine
     issue as to any material fact and that the moving party is entitled to a judgment as a matter
25   of law." Fed. R. Civ. P. 56(c). See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).
26   
27   Substantive law determines which facts are material, and "[o]nly disputes over facts that
28

1   might affect the outcome of the suit under the governing law will properly preclude the entry

2   of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

3        The party opposing summary judgment may not rest upon the mere allegations or

4   denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is

5   a genuine issue for trial." Fed. R. Civ. P. 56(e). See Matsushita Elec. Indus. Co. v. Zenith

6   Radio Corp., 475 U.S. 574, 586-87 (1986). There is no issue for trial unless there is sufficient

7   evidence favoring the non-moving party; "[i]f the evidence is merely colorable, or is not

8   significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50

9   (citations omitted). However, such evidence offered by "the non-movant is to be believed,

10  and all justifiable inferences are to be drawn in his favor" at the summary judgment stage.

11  Id. at 255.

## II. Duty to Notify Parties of Policy Cancellation

13       Defendant claims insurance providers ("insurers") have a duty to inform parties

14  named on a commercial insurance policy ("insureds") when a premium finance company

15  cancels such a policy (Def.'s Mot. Summ. J., Doc. 21 at 6). Defendant claims that such duty

16  is imposed either by statute, on public policy grounds, or under equitable estoppel principles.

17  However, under Arizona law, no such duty exists on any of these bases.[1]

### A. No Statutory Duty Requiring Plaintiffs to Notify Defendant

20       Whether an insurer has a duty to notify parties of a policy cancellation depends on

21  who cancels the policy and whether there is a statutory, regulatory or contractual obligation

22  to provide notice of the cancellation. See, generally, A.R.S. § 20-1674 (stating notification

23  requirements when an *insurer* cancels a policy); A.R.S. § 6-1415 (stating notification

24  requirements when a *premium finance company* cancels a policy). It is clear that when an

25  *insurer* initiates the cancellation of a policy for nonpayment of a premium, the insurer must

26  mail a written notice of cancellation to the insured at least ten days before the cancellation

27
28       [1]Whether other parties, such as AVU, had a duty to notify Defendant of the
    cancellation of the Policies is not an issue before the Court.

goes into effect. A.R.S. § 20-1674(A). E.g., Valley Nat'l Bank of Ariz. v. Ins. Co. of N. Am., 836 P.2d 425, 427 (Ariz. Ct. App. 1992) (imposing a duty on insurer to notify affected party of cancellation when the *insurer* cancelled the policy). However, the statutory requirements change when a *premium finance company* cancels an insurance policy on behalf of the insured. A.R.S. § 6-1415.

**1. No Duty to Notify Imposed on Plaintiffs by A.R.S. § 6-1415(A)-(C)**

When a premium finance company validly cancels an insurance policy, only the premium finance company, *not* the insurer, has a duty to notify the insured. A.R.S. § 6-1415(C) (under these circumstances, the policy "shall be cancelled as if the notice of cancellation had been submitted by the insured himself"). See also, Bryce v. St. Paul Fire and Marine Insur. Co., 783 P.2d 246, 308 (Ariz. Ct. App. 1989) (holding that because a premium finance company cancelled a policy on behalf of the insured, the insurer had no duty to notify the insured of such cancellation). A premium finance company is an entity "engaged in whole or in part in the business of financing insurance premiums, [and] entering into premium finance agreements with insureds." A.R.S. § 6-1401(6).

A premium finance company may obtain "a power of attorney [from the insured] enabling [it] to cancel the insurance [policy]" for nonpayment of a premium, provided it follows the statutory cancellation procedures. Id. at § 6-1415(A). Under these circumstances, the premium finance company - *not the insurer* - is required to send notice to the insured of its intent to cancel the policy. Id. at § 6-1415(B).

Following the notice of intent to cancel, if the reason for cancellation is not cured within ten days, the premium finance company may cancel the policy by sending a notice of cancellation to the insurer. Id. at § 6-1415(C). The insurer then has no obligation to notify the insured of such cancellation because under these circumstances the cancellation is treated "as if [it had] been submitted by the insured himself." Id.

Arizona precedent is sparse but not devoid of authority regarding notice requirements imposed on premium finance companies. Bryce, 783 P.2d at 247. In Bryce, the court

1   evaluated this question under A.R.S. § 20-2007, an earlier version of the statute substantively

2   identical to, and replaced by, A.R.S. § 6-1415, holding that an insurer had no duty to notify

3   the insured after the premium finance company validly cancelled the policy. 783 P.2d at 247.

4   In that case, after the premium finance company notified the insured of the cancellation, the

5   insured submitted a claim to the insurer regarding damages caused by a fire in his home. Id.

6   at 246. When the claim was denied by the insurer, the insured sued claiming the insurer had

7   a duty to notify the insured of the cancellation to render it effective. Id. at 247. The court

8   disagreed, stating unequivocally that the insurer's failure to notify the insured of the

9   cancellation did not invalidate the cancellation properly initiated by the premium finance

10  company. Id. See also, Gorham Co. v. First Fin. Ins. Co., 44 Cal. Rptr. 3d 197, 204-05 (Cal.

11  Ct. App. 2006) (holding, under statutes substantively identical to Arizona statutes, insurers

12  do not have a duty to notify insureds of cancellations initiated by premium finance

13  companies).[2]

14      Defendant contends that its status as a "named insured" imposes a duty on Plaintiffs

15  to have notified him of the cancellation. Defendant misstates the applicable law; whether

16  Defendant was an "insured,"[3] a "named insured," or an "additional insured" under the Polices

17

18      [2]The parties cite to several cases outside Arizona but, with the exception of Gorham
    Co. v. First Fin. Ins. Co., 44 Cal. Rptr. 3d 197 (Cal. Ct. App. 2006), they are distinguishable
19  from the case here. E.g., Gallatin Fuels, Inc. v. Westchester Fire Ins. Co., Nos. 06-3133, 06-
    3141, 2007 WL 2274437, at *5 (3d Cir. 2007) (no duty imposed on insurer to notify because
20  the insured's agent cancelled the policy on behalf of insured); Kotlar v. Hartford Fire Ins.
    Co., 100 Cal. Rptr. 2d 246, 250 (Cal. Ct. App. 2001) (duty imposed on insurer to notify
21  insured because insurer initiated cancellation); Olivine Corp. v. United Capital Ins. Co.,52
22  P.3d 494, 498-99 (Wash. 2002) (duty imposed on insurer to notify insured only because
    premium finance company was not authorized to cancel policy on insured's behalf).
23

24      [3]An "insured" is defined as "any person covered under an insurance contract or other
25  evidence of insurance coverage subject to regulation under title 20." A.R.S. § 6-1401(2). A
    "person" is defined as "an individual, company, insurer, association, organization, society,
26  reciprocal or inter-insurance exchange, partnership, syndicate, business trust, corporation and
    entity." Id. at § 20-105. The statutes imposing notice requirements on premium finance
27  companies only refer to "insureds" and do not mention "named insureds" or "additional
28  insureds." Id. at § 6-1415(C).

is irrelevant because no duty exists to notify *any* insured when a premium finance company, authorized to cancel the policy on the insured's behalf, initiates cancellation. A.R.S. § 6-1415(C). Because Standard cancelled the Policies, not Plaintiffs, Plaintiffs owed no duty to notify Defendant.

### 2. No Duty to Notify Imposed on Plaintiffs by A.R.S. § 6-1415(D)

An insurer also has a duty "[i]f statutory, regulatory and contractual restrictions provide that the insurance [policy] may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party." Id. at § 6-1415(D). Defendant argues that it is a "third party" under A.R.S. § 6-1415(D) and that Plaintiffs had a contractual obligation to notify Defendant because language from the Certificate states:

> Should any of the above described policies be cancelled before the expiration date thereof, the issuing insurer will endeavor to mail 30* days written notice to [Defendant], but failure to do so shall impose no obligation or liability of any kind upon the insurer, its agents or representatives.

(Def.'s SOF, Doc. 22 at Ex. 1). This argument is unpersuasive. Even if Defendant could be considered a "third party" under the statute,[4] this contractual language is insufficient to override the statutory provisions that do not impose a duty on Plaintiffs. A.R.S. § 6-1415(D).

Notably, Plaintiffs did not issue the Certificate; AVU's insurance agent, Minard-Ames Insurance Group, did. (Def.'s SOF, Doc. 22 at Ex. 1). Even if Plaintiffs did issue the Certificate, however, the non-binding language creates no enforceable obligation on Plaintiffs to notify Defendant; instead it merely states Plaintiffs would "endeavor" to notify Defendant of a cancellation. Id. This statement is immediately followed by an express caveat that "failure to [notify] shall impose no obligation or liability of any kind upon the insurer, its agents, or representatives." Id. The Certificate's clear language against an enforceable obligation to notify does not create a duty to notify Defendant under A.R.S. § 6-1415(D).

---

[4]See Olivine, 52 P.3d at 499 (stating that the insured cannot be both an "insured" and a "third party" under the same policy).

**B. Public Policy Does Not Support Imposing a Duty on Plaintiffs**

Defendant next argues it would be against public policy to not enforce the language in the Certificate, wherein the Plaintiffs stated they would "endeavor" to notify Defendant of a cancellation of the policy. The Court is unpersuaded by this argument.

Public policy arguments concerning language in insurance policies may be persuasive if the language is ambiguous. State Farm Mut. Auto. Ins. Co. v. Wilson, 782 P.2d 727, 728 (Ariz. 1989) (after finding insurance policy language ambiguous, court evaluated the language in light of legislative history of the relevant statute and public policy reflected in the statute). When language is determined to be ambiguous, the court will look "at public policy as evidenced by legislative enactments and relevant case law." Id. at 729.

The language in the Certificate is not ambiguous, but even it if is, relevant statutory and case law do not reflect a policy where an insurer is required to notify the insured after a premium finance company validly cancels the policy. E.g., A.R.S. § 6-1415(C); Bryce, 783 P.2d at 247. Indeed, the express language of the statute specifically exempts an insurer from notifying the insured unless a "statutory, regulatory and contractual restrictions provide that the insurance contract may not be cancelled unless notice is given to a government agency, mortgagee or third party." A.R.S. § 6-1415(D). As previously stated, Plaintiffs owed no duty to notify Defendant under A.R.S. § 6-1415(D) and Defendant fails to identify any relevant statutory or case law precedent that supports a public policy argument to the contrary.

**C. Equitable Estoppel Principles Do Not Impose a Duty on Plaintiffs**

Lastly, and without a thorough discussion, Defendant asserts Plaintiffs should be estopped from having cancelled the policy, presumably on the basis of the language in the Certificate indicating an "endeavor" to notify Defendant of the cancellation. This argument also fails to persuade the Court.

To successfully invoke a remedy under equitable estoppel principles, a party must show the other engaged in conduct that induced the party to believe in certain material facts,

1  upon which the party justifiably relied, resulting in harm to the party. <u>Darner Motor Sales,</u>

2  <u>Inc. v. Univ. Underwriters Ins. Co.</u>, 682 P.2d 388, 399 (Ariz. 1984).

3          Even if Plaintiffs issued the Certificate, Defendant's equitable estoppel argument

4  would  fail. First, the unambiguous language in the Certificate "impose[s] no obligation or

5  liability of any kind upon the insurer" for failing to notify Defendant of a cancellation.

6  Nothing in this language suggests the drafter intended to induce Defendant to believe there

7  was an enforceable promise to provide notice of cancellation. As such, Defendant could not

8  have justifiably relied on this language to warrant a remedy under equitable estoppel and

9  therefore no such remedy will be provided by this Court.

10 Accordingly,

11          **IT IS ORDERED** Plaintiffs' Motion for Summary Judgment **IS GRANTED** and **IT**

12 **IS DECLARED** (1) Plaintiffs took no affirmative action to cancel the Policies; (2) the

13 Policies were cancelled by Standard; (3) the Policies were cancelled effective October 16,

14 2005; (4) Plaintiffs had no duty to notify Defendant that the Policies had been cancelled; and

15 (5) the Policies do not provide coverage for the Claim.

16          **IT IS ORDERED** Defendant's Motion for Summary Judgment **IS DENIED**.

17          **IT IS ORDERED** that the parties submit motions for fees no later than 30 days from

18 the date of this Order.

19

20 DATED this 17th day of March, 2009.

21

22

23

24  _____

25                Roslyn O. Silver
                United States District Judge

26

27

28

- 8 -